UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FRED NEKOUEE, individually,

        Plaintiff,

vs.                                                                 Case No. 4:19-cv-02661

BW RRI IV LLC,
a Delaware limited liability company

        Defendant.

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, as a mobility impaired individual (sometimes referred to as "Plaintiff"), hereby sues the Defendant, BW RRI IV LLC, a Delaware limited liability company (sometimes referred to as "Defendant"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.    Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.    Defendant's property, Red Roof Inn, has an address of 2010 Zumbehl Road, St. Charles, Missouri 63303 and is located in the County of St. Charles.

3.    Venue is proper in the Eastern District of Missouri because the situs of the property lies in this judicial district.   The Defendant's property is located in and does business within this judicial district.

4.    Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. See also 28 U.S.C. § 2201 and § 2202.

5. Defendant owns, leases, leases to, or operates a place of public accommodation, the Red Roof Inn, as defined by the ADA, 42 U.S.C. § 12181(7)(A), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

6. The Red Roof Inn is a place of public accommodation.

7. Defendant is responsible for complying with the obligations of the ADA.

8. Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA. Fred Nekouee has progressive multiple sclerosis, weak limbs, and requires the use of a wheelchair for mobility.

9. Mr. Nekouee travels to the St. Louis metropolitan area every three to six months to visit heavy equipment dealerships, where he assists his brother to compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment.

10. Plaintiff Fred Nekouee has visited the St. Louis area near the Red Roof Inn in June 2015, June 2016, September 2017, December 2017, March 2018, July 2018, September 2018, January 2019, May 2019, and September 2019.

11. Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the Red Roof Inn which forms the basis of this lawsuit on January 29, 2019 (check in) and January 30, 2019 (check out).

12. Plaintiff visited the Red Roof Inn again on September 15, 2019, but due to the barriers to access at the property he observed and encountered, he decided not to stay at the Red Roof Inn that night.

13. Fred Nekouee plans to return to the property to avail himself of the goods and

services offered to the public at the property since it is close to the heavy equipment dealerships he visits in the St. Louis area.

14. Fred Nekouee has definite plans to return to the St. Louis area in December 2019 or January 2020.

15. The Plaintiff, Mr. Nekouee, likes to stay at moderately-priced hotels like the Red Roof Inn near the heavy equipment dealerships he visits.

16. For the reasons set forth in paragraphs 9 through 15 and 25 of this Complaint, Mr. Nekouee plans to return to the Red Roof Inn.

17. The Plaintiff has encountered architectural barriers at the subject property. The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, in access aisles and of walking surfaces, and have impaired his use of the restroom in the Red Roof Inn.

18. The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

19. The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

20. Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

21. On his visit to the Red Roof Inn, the Plaintiff encountered excessively steep running slopes in its parking lot and access aisles.

22. The Plaintiff encountered barriers to access the restroom in the accessible room 108

of the Red Roof Inn.

23. The Plaintiff is deterred from visiting the Red Roof Inn, even though the Red Roof Inn is close to the heavy equipment dealerships he visits in the area, because of the difficulties he will experience in the lobby, accessible room 108, parking lot, access aisles and walking surfaces (sidewalks) until the property is made accessible to him in a wheelchair.

24. Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 30 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

25. Fred Nekouee desires to visit the Red Roof Inn not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

26. The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

27. The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

28. Preliminary inspections of the Red Roof Inn have shown that violations exist.

29. Physical conditions that exist at the Property are accurately described in each

subsection of each designated with a romanette "(i)" in each lettered subparagraph of paragraph 30 below

30.     The violations that Fred Nekouee personally encountered or observed on his visit to the Red Roof Inn include, but are not limited to:

**PARKING AREA**

a.  (i) In the parking lot, the bottom of the accessible parking sign in front of the lobby is less than 60 inches above the ground surface.  (ii) The bottom of this accessible parking sign is about 42 inches above the ground surface and less than 60 inches above the ground surface, in violation of Federal Law 2010, ADAAG § 502.6.  (iii) Due to its height above the ground, it was difficult for the Plaintiff to see this accessible sign.  (iv) The action required to raise this sign to the proper height is easily accomplishable and able to be carried out without much difficulty or expense.

b.  (i) In the parking lot, the parking space for disabled patrons between the outside of rooms 119 and 121 has a running slope steeper than 1:48 and steeper than 3.1%.  (ii) This parking space for disabled patrons has a running slope as steep as about 1:16.9 (5.9%) and steeper than the maximum allowed slope of 1:48, in violation of Federal Law 2010, ADAAG § 502.4.  (iii) The Plaintiff observed this slope in this parking space, and it deters him from staying at the Red Roof Inn.  (iv) The action required to reduce the running slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

c.  (i) In the parking lot, the parking space for disabled patrons between the outside of rooms 118 and 120 has a running slope that is steeper than 1:48 and steeper than 3.1%. (ii) This parking space for disabled patrons has a running slope that is steeper than 1:48

and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.  (iii) The Plaintiff encountered this slope in this parking space and it made his wheelchair unstable.  (iv) The action required to reduce the running slope in this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

    d.  (i) In the parking lot, the parking space for disabled patrons in front of the lobby has a running slope steeper than 1:48 and steeper than 3.1%.  (ii) This parking space has a running slope steeper than 1:48 and as steep as about 4.9%, in violation of Federal Law 2010, ADAAG § 502.4.  (iii) The Plaintiff encountered this slope in this parking space and it made his wheelchair unstable.  (iv) The action required to reduce the slope in this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

    e.  (i) In the parking lot, the running slope of the access aisle serving the parking spaces for disabled patrons between the outside of rooms 119 and 121 is steeper than 1:48 and steeper than 3.1%.  (ii) The running slope of this access aisle is steeper than 1:48 and as steep as about 1:15.6 (6.4%), in violation of Federal Law 2010, ADAAG § 502.4.  (iii) The Plaintiff observed this slope in this access aisle, and it deters him from staying at the Red Roof Inn.  (iv) The action required to reduce the slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

    f.  (i) In the parking lot, the running slope of the access aisle serving the parking spaces for disabled patrons between the outside of rooms 121 and 123 is steeper than 1:48 and steeper than 3.1%.  (ii) The running slope of this access aisle is steeper than 1:48 and as steep as about 1:20.8 (4.8%), in violation of Federal Law 2010, ADAAG § 502.4.  (iii) The Plaintiff observed this slope in this access aisle, and it deters him from staying at the

Red Roof Inn.  (iv) The action required to reduce the slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

    g.  (i) In the parking lot, the running slope of the access aisle serving the parking spaces for disabled patrons between the outside of rooms 118 and 116 is steeper than 1:48 and steeper than 3.1%.  (ii) This access aisle has a running slope that is steeper than 1:n violation of Federal Law 2010, ADAAG § 502.4.  (iii) The Plaintiff encountered this steep slope in this access aisle while moving in his wheelchair, and it made his wheelchair unstable.  (iv) The action required to reduce the running slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

    h.  (i) In the parking lot, the running slope of the access aisle serving the parking spaces for disabled patrons between the outside of rooms 120 and 122 is steeper than 1:48 and steeper than 3.1%.  (ii) The running slope of this access aisle is steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.  (iii) The Plaintiff encountered this running slope in this access aisle while moving in his wheelchair, and it made his wheelchair unstable.  (iv) The action required to reduce the running slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

    i.  (i) In the parking lot, the running slope of the access aisle serving the disabled parking spaces in front of room 103 is steeper than 1:48 and steeper than 3.1%.  (ii) The running slope of this access aisle is steeper than 1:48 and steeper than 6%, in violation of Federal Law 2010, ADAAG § 502.4.  (iii) The Plaintiff observed this running slope in this access aisle, and it deters him from staying at the Red Roof Inn.  (iv) The action required to reduce the slope of this access aisle is easily accomplishable and able to be carried out

without much difficulty or expense.

 j. (i) The transition from the access aisle in front of room 121 to the cement walkway in front of and outside of room 121 contains a change of level greater than 0.5 inches.  (ii) The change of level from this access aisle to the cement walkway is greater than 0.5 inches and more than 1 inch, in violation of Federal Law 2010, ADAAG §§ 303.3 and 405.4.  (iii) The Plaintiff observed this change of level, and it deters him from staying at the Red Roof Inn.  (iv) The action required to reduce the change of level between this access aisle and the walkway is easily accomplishable and able to be carried out without much difficulty or expense.

 k. (i) The transition from the access aisle in front of room 122 to the cement walkway in front of room 122 contains a change of level greater than 0.5 inches.  (ii) The change of level from this access aisle to the cement walkway is greater than 0.5 inches and more than 1 inch, in violation of Federal Law 2010, ADAAG §§ 303.3 and 405.4.  (iii) The Plaintiff encountered this change of level, it stopped the forward movement of his wheelchair, and he required assistance to enter the walkway from the access aisle.  (iv) The action required to reduce the change of level between this access aisle and the walkway is easily accomplishable and able to be carried out without much difficulty or expense.

 l. (i) The width of the walking surface between the concrete stoppers shown in the photographs below in the accessible parking space and access aisle in front of room 103 is less than 36 inches.  (ii) The width of this walking surface between these concrete stoppers is less than 36 inches and is only about 16 inches wide, in violation of Federal Law 2010, ADAAG § 403.5.1.  (iii) The Plaintiff observed the width of this walking surface between the concrete stoppers, and it deters him from staying at the Red Roof Inn.  (iv) The action

required to relocate the concrete stoppers is easily accomplishable and able to be carried out without much difficulty or expense.





**ENTRANCE DOOR**

9

m. (i) The time for the lobby door to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds. (ii) The time for the lobby door to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds and is about 3 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1. (iii) Due to the time it takes for this door to close, the Plaintiff could not make it all of the way through this door before the door closed on his wheelchair. (iv) The action required to adjust the door closer is easily accomplishable and able to be carried out without much difficulty or expense.

n. (i) The force needed to open the entrance door is more than 5 pounds. (ii) The force needed to open the entrance door is about 10 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. (iii) Due to the force necessary to open this door, the Plaintiff required assistance in his wheelchair to open this door. (iv) The action required to adjust the closing force of this entrance door is easily accomplishable and able to be carried out without much difficulty or expense.

**ACCESSIBLE GUESTROOM 108**

o. (i) In accessible guestroom 108, the low end of the drapery pull rod is higher than 48 inches above the floor. (ii) The low end of the drapery pull rod is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2. (iii) Due to its height above the floor, the Plaintiff could not reach the drapery rod pull from his wheelchair. (iv) The action required to replace this drapery rod pull is easily accomplishable and able to be carried out without much difficulty or expense.

p. (i) In accessible guestroom 108, the bottom edge of the mirror's reflecting surface is higher than 35 inches above the floor. (ii) The bottom edge of this mirror's reflecting surface is higher than 35 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3. (iii) Due to the height of this mirror's reflecting surface above the floor, the Plaintiff could not see his full face in this mirror from his wheelchair. (iv) The action required to adjust the height of this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

q. (i) In the restroom of accessible guestroom 108, the water closet does not have the flush control mounted on the open and wide side of the clear floor space. (ii) This water closet does not have the flush control mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010, ADAAG § 604.6. (iii) The Plaintiff could not flush this toilet from his wheelchair due to the location of the flush control. (iv) The action required to replace the tank with one with the flush control on the side of the clear floor space is easily accomplishable and able to be carried out without much difficulty or expense.



r. (i) In the restroom in accessible guestroom 108, the towel shelf is higher than 48 inches above the floor. (ii) This towel shelf is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2. (iii) From his wheelchair, the Plaintiff could not reach a towel from this shelf due to its height above the floor. (iv) The action required to relocate this shelf is easily accomplishable and able to be carried out without much difficulty or expense.

**VENDING MACHINE ROOM**

s. (i) The closing time for the door of the vending machine room from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds. (ii) The closing time for the door of the vending machine room from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds and is about 3 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1. (iii) Due to the short closing time of this door, the

Plaintiff could not make it through this door before it closed on his wheelchair. (iv) The action required to adjust the closing time of this door is easily accomplishable and able to be carried out without much difficulty or expense.

    t.   (i) The force needed to open the door to the vending machine room is more than 5 pounds. (ii) The force needed to open the door to the vending machine room is about 12 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. (iii) Due to the force necessary to open this door, the Plaintiff required assistance in his wheelchair to open this door. (iv) The action required to adjust the closing force of this door to the vending machine room is easily accomplishable and able to be carried out without much difficulty or expense.

    u.   (i) In the vending machine room, the Coca Cola vending machine card reader is higher than 48 inches above the floor. (ii) The Coca Cola vending machine card reader is higher than 48 inches above the finish floor and as high as about 59 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.2. (iii) Due to its height above the floor, the Plaintiff tried but could not reach this card reader from his wheelchair. (iv) The action required to replace this vending machine is easily accomplishable and able to be carried out without much difficulty or expense.

    v.   (i) In the vending machine room, the Pepsi vending machine card reader is higher than 48 inches above the floor. (ii) The Pepsi vending machine card reader is higher than 48 inches above the finish floor and as high as about 56 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2. (iii) Due to its height above the floor, the Plaintiff tried but

13

could not reach this card reader from his wheelchair. (iv) The action required to replace this vending machine is easily accomplishable and able to be carried out without much difficulty or expense.

31. All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

32. The discriminatory violations described in paragraph 30 are not an exclusive list of the Defendant's ADA violations. Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.

33. The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above. The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

34. Defendant has discriminated against the individual by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

35. Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities,

privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

36.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

37.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

38.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

39.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or

waived by the Defendant.

40. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter the Red Roof Inn and adjacent parking lot spaces, access aisles, and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a. The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b. Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

      d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted,

s/Robert J. Vincze
Robert J. Vincze (MO #37687)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*